IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  08-cv-01834-WYD-KLM

N-A-M-,

       Petitioner,

v.

JOHN LONGSHORE, Acting Field Office Director, Office of Detention and Removal, Immigration & Customs Enforcement, Department of Homeland Security,

       Respondent.

---

**ORDER**

---

THIS MATTER is before the Court on Respondent's Motion to Dismiss [doc. #23], filed April 17, 2009.  In the Motion, Respondent asks the Court to dismiss the present action as moot.  After considering the Motion and responses thereto, as well as the underlying habeas corpus Petition, responses thereto, and arguments advanced at the February 12, 2009 hearing, I enter the following written Order.

**A. FACTUAL BACKGROUND**

Petitioner N-A-M-, who is a native of El Salvador, entered the United States without inspection on June 15, 2003 and was subsequently detained and placed in removal proceedings in November 2006.  (Pet. [doc. #1] ¶ 12.)  Petitioner had been convicted on June 7, 2005 of felony menacing in violation of Colorado law.  (Pet. ¶ 12.)  On March 13, 2007, an Immigration Judge denied her application for withholding of removal, finding that although Petitioner had met the burden for this form of relief, her felony menacing conviction made her statutorily ineligible.  (Pet. ¶ 14, Ex. 1.)  The

Board of Immigration Appeals upheld the denial, recognizing a circuit split but deciding to follow the Seventh Circuit in holding that felony menacing constitutes a "particularly serious crime" for the purposes of 8 U.S.C. § 1101(a)(43). *In re N-A-M-*, 24 I. & N. Dec. 336, 337, 338, 341 (BIA 2007). Petitioner appealed to the Tenth Circuit, which issued an order staying Petitioner's removal. *N-A-M- v. Mukasey*, No. 07-9580 (10th Cir. Dec. 12, 2007). The court held that "petitioner has shown that this case involves at least one 'serious, substantial, difficult, and doubtful legal issue.' . . . The relevant legal issues . . . are now before the Supreme Court of the United States, as it granted certiorari in *Ali* [the Seventh Circuit case]. 128 S. Ct. 29 (U.S. Sept. 25, 2007)." *Id.*, slip op. at 2-3. However, the Supreme Court never heard *Ali* because the parties settled their dispute. (Pet. ¶ 20 n.4.)

Petitioner filed a Petition for Writ of Habeas Corpus [doc. #1] in this Court on August 27, 2008. The Petition, filed pursuant to 28 U.S.C. § 2241, asked the Court to "remedy the unlawful detention" imposed by Respondent John Longshore, the Acting Field Office Director for the Denver District Office of Immigration and Customs Enforcement. (Pet. 1.) Petitioner had been detained since November 3, 2006 and argued that her prolonged detention violated her constitutionally protected right to liberty under the Due Process Clause. Among the relief Petitioner requested was for the Court to "[o]rder her released from custody under such safeguards as the Court deems appropriate to ensure her appearance at future immigration proceedings." (Pet. 13.)

The parties came before this Court on February 12, 2009 for an expedited hearing on the Petition. Counsel for Petitioner, who had previously conceded that Petitioner had been detained pursuant to 8 U.S.C. § 1226(c), INA § 236(c), argued at the hearing that there was in fact no statutory authority for Petitioner's detention under the circumstances. When asked what relief she sought from the Court, she stated:

> I'm asking today to put the Government to its burden to say what exactly is the lawful authority for my client's continued detention. And if there is none under 236, which we believe is the case, and she has been detained for a period of time which is far beyond reasonable, that she be released on an order of supervision. They have the ability to do so. And, frankly, most jurisdictions would have done so.

(Hr'g Tr. 9, Feb. 12, 2009.)

In making her argument that the prolonged detention was unreasonable, Petitioner's counsel stated, "If the Government's concern here is either flight risk or danger to the community, they have the power under an order of supervision to narrowly prescribe where she is, she can be asked to wear an ankle bracelet, she can have reporting requirements." (Tr. 17.) Later in the hearing, she further said with regard to this matter:

> If they have an order of supervision, if they really have concerns about her safety, they can put certain reporting requirements on. They can ask her to wear an ankle bracelet. It is the preferred method of actually tracking somebody's whereabouts, as opposed to bond.

(Tr. 23.)

Per my order at the hearing, Petitioner filed a supplemental brief [doc. #19] on February 18, 2009. In this brief, Petitioner reiterated that no statute authorized her

detention, and accordingly she asked the Court "to order her immediate release, without condition." (Pet'r's Br. 6.) She then stated:

> In terms of fashioning relief for the Petitioner (should this Court find that there is statutory authority for detention, but that the length of Petitioner's confinement violates her substantive Due Process rights), the "post-final order" provisions concerning Orders of Supervision, at § 1231(a)(3), should serve as an appropriate model for this Court, and Petitioner would urge the Court to compel Respondent to craft such an Order. The Respondent is quite familiar with generating Orders of Supervision for those individuals with final orders whose physical removal has been delayed, carefully tailoring such Orders to the needs of the agency and the circumstances of each individual. . . . [R]elease under an Order of Supervision offers practical advantages which make it more suitable for Petitioner than release under a bond, as the former can be more narrowly tailored to address the government's concerns. For example, under an Order of Supervision the government can require Petitioner to wear an ankle bracelet, or report regularly for period check-ins. 8 U.S.C. § 1231(a)(3).

(Pet'r's Br. 9.)

On March 9, 2009, ICE released Petitioner from custody on a standard Order of Supervision. (Resp't's Mot. to Dismiss Ex. 1.) Among other things, the order requires Petitioner to wear an ankle bracelet, accept only authorized employment, and follow any prescribed doctors orders. Respondent then filed the present Motion on April 17, 2009, asking that the present case be dismissed as moot pursuant to Federal Rule of Civil Procedure 12(h)(3), which requires a court to dismiss an action if at any time it determines it lacks subject-matter jurisdiction. Petitioner responded on May 7, 2009 [doc. #25], contending that the case is not moot because 1) Petitioner is still technically in custody and experiences significant restraints on her liberty, 2) the relief she had requested was for the Court, not Respondent, to define the terms of her release, 3) the authority for her detention, and consequently the Order of Supervision, is still undefined,

and 4) the theory of voluntary cessation applies as an exception to the mootness doctrine in this case. Respondent replied on May 21, 2009 [doc. #27].

**B. ANALYSIS**

**1. Authority to Detain Petitioner**

I find that I must address only one aspect of the present case at this time. The parties had initially agreed that the authority under which Petitioner's detention should be evaluated is 8 U.S.C. § 1226(c), INA § 236(c), which gives the Attorney General the authority to detain individuals who have committed certain crimes. However, Petitioner now contests the reach of that provision, arguing that it does not apply to individuals in her situation. Accordingly, Petitioner asserts that it is unclear what authority Respondent has to impose any sort of restriction on her liberty, even in the form of an Order of Supervision, and she requests her immediate release, without condition. Respondent now argues that the authority for detaining Petitioner lies in 8 U.S.C. § 1226(a), INA § 236(a), which authorizes detention "pending a decision on whether the alien is to be removed from the United States."

The Ninth Circuit decided in two companion cases that § 1226(a) governs the detention of individuals appealing to courts of appeals a final order of removal affirmed by the BIA. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1057-62 (9th Cir. 2008); *Casas-Castrillon v. DHS*, 535 F.3d 942, 944 (9th Cir. 2008). First, in *Prieto-Romero*, the Ninth Circuit held that the governing statute is § 1226(a) rather than 8 U.S.C. § 1231, INA § 241, which authorizes the detention of individuals ordered removed. 534 F.3d at 1057-62. The court conducted a plain-language analysis and held that "the plain

language of § 1231(a) provides no authority to detain aliens such as Prieto-Romero whose removal order is *administratively* - but not *judicially* - final." *Id.* at 1060.  In concluding that § 1226(a) applies instead, the court held, "It is reasonable to consider the judicial review of a removal order as part of the process of making an ultimate 'decision' as to whether an alien 'is to be removed.'" *Id.* at 1062.

In *Casas-Castrillon*, the Ninth Circuit provided its reasoning for why § 1226(a) rather than § 1226(c) governs the present situation.  *See* 535 F.3d at 947-48.  The court stated:

> [T]he mandatory, bureaucratic detention of aliens under § 1226(c) was intended to apply for only a limited time and ended in this case when the BIA affirmed Casas' order of removal in July 2002.  Thereafter, the Attorney General's detention authority rests with § 1226(a) until the alien enters his "removal period," which occurs only after we have rejected his final petition for review or his time to seek such review expires.

*Id.* at 948.

Petitioner urges the Court to give *Chevron* deference to the BIA's findings with regard to the scope § 1226, notwithstanding the Ninth Circuit precedent.  *See Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984).  In *In re Joseph*, 22 I. & N. Dec. 660 (BIA 1999), the BIA decided the issue of "whether the respondent remains 'subject to' section 236(c)(1) for automatic stay purposes after an Immigration Judge has decided that he is not."  *Id.* at 668.  Part of the BIA's reasoning in arriving upon a ruling was that "the 'decision' referred to in section 236(a) of the Act, which cuts off the applicability of that section, is an administratively final decision."  *Id.* at 669.  The BIA also found that § 1231 "controls the detention and release of aliens after an administratively final order."  *Id.* at 668.  The parties now seem to agree that § 1231 does not govern Petitioner's

detention.  Petitioner relies upon the language from *Joseph* in arguing that the "decision" referred to in § 1226(a) is the final administrative order affirmed by the BIA and that there is accordingly no provision authorizing detention in her current situation.

The Ninth Circuit in *Prieto-Romero* declined to give *Chevron* deference to the BIA's suggestion in *Joseph* that § 1231 authorizes the detention of aliens in Petitioner's situation.  534 F.3d at 1061.  The court held, "We will not defer to the BIA when its construction of a statute defies its 'plain and sensible meaning.'"  *Id.* (quoting *Kankamalage v. INS*, 335 F.3d 858, 862 (9th Cir. 2003)).  "Congress has 'directly spoken to the precise question at issue' and its intent is readily ascertainable using the traditional tools of statutory interpretation."  *Prieto-Romero*, 534 F.3d at 1061 (quoting *Chevron*, 467 U.S. at 842-43 & n.9).

I likewise find that *Joseph*'s suggestion that the scope of § 1226 does not extend beyond administrative proceedings is not entitled to *Chevron* deference.  I agree with the well-reasoned Ninth Circuit opinions that Congress has directly spoken to the issue of what provision governs Petitioner's detention, and that provision is 1226(a).  In *Chevron*, the Supreme Court held, "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  467 U.S. at 842-43.  The suggestion that Petitioner should be released without condition defies the INA's plain and sensible meaning.  *Joseph*, which involved a different issue than the present issue, did not suggest that there would be a period in which individuals appealing final removal orders would not be subject to detention or supervision.  It merely proceeded under a different framework

than the Ninth Circuit. I now agree with the Ninth Circuit that Petitioner's detention is governed by § 1226(a).

### 2. Mootness

Having found that there is statutory authority governing Petitioner's detention, I find that the remaining issues are moot. In *Riley v. INS*, 310 F.2d 1253 (10th Cir. 2002), the Tenth Circuit dismissed as moot the habeas petition of an immigration detainee who had been granted supervised release pending his deportation from the United States. The petitioner "had asked 'for immediate release from custody under adequate and reasonable supervision.'" *Id.* at 1256. The Tenth Circuit held that "the fact that [the petitioner] is no longer in custody does not automatically moot [the] petition because he was in custody at the time of filing." *Riley*, 310 F.3d at 1256 (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). "Our inquiry then becomes whether [the petitioner] meets one of the exceptions to the mootness doctrine." *Riley*, 310 F.3d at 1256. After deciding that none of the exceptions applied, the Tenth Circuit held that "[the petitioner's] release from detention moots his challenge to the legality of his extended detention." *Id.* at 1257.

The circumstances of the present case are strikingly similar to those in *Riley*. Like in *Riley*, Petitioner asked to be released from detention under supervision and was subsequently released, and it does not matter that the supervision order came from Respondent and not from the Court. Furthermore, Petitioner has suggested at various points throughout these proceedings that certain restraints on liberty, including the

wearing of an ankle bracelet, would be appropriate.  Following the analysis in *Riley*, release from custody renders the Petition moot unless an exception applies.

The first relevant exception, as recognized by some of the cases cited by Petitioner, is whether "secondary or collateral injuries survive after resolution of the primary injury."  *Riley*, F.3d at 1257 (quotation omitted); *see also Spencer*, 523 U.S. at 7.  In *Camara v. Comfort*, 235 F. Supp. 2d 1174 (D. Colo. 2002), this Court found with regard to the collateral injury exception:

> The primary injury alleged in the petition . . . was Petitioner's illegal detention, not the final order of removal to which he is subject.  Since the conditions in the order of supervision flow, not from Petitioner's illegal detention, but from the final order of removal, they are not collateral consequences of Petitioner's detention, and therefore cannot sustain the petition's justiciability under Article III.

*Id.* at 1176 (citing *Riley*, 310 F.3d at 1256-57).

Like in *Riley* and *Camara*, Petitioner has challenged her detention, not the final order of removal.  Because the conditions in the Order of Supervision flow from the final order of removal rather than the detention, the "collateral consequences" exception to the mootness doctrine does not apply.  *Cf. Lane v. Williams*, 455 U.S. 624, 631 (1982) ("Since respondents elected only to attack their sentences, and since those sentences expired during the course of these proceedings, this case is moot.  'Nullification of a conviction may have important benefits for a defendant . . . but urging in a habeas corpus proceeding the correction of a sentence already served is another matter.'" (quoting *North Carolina v. Rice*, 404 U.S. 244, 248 (1971) (alteration in original))).  The cases Petitioner cites are distinguishable because in those cases the petitioners had challenged the underlying conviction or order of removal rather than their conditions of

detention.  *See Spencer*, 523 U.S. at 7-8; *Pena v. Meissner*, 232 F.3d 896, 2000 WL 1028937, at *2 (9th Cir. Jul. 26, 2000); *Williams v. INS*, 795 F.2d 738, 741-42 (9th Cir. 1986); *United States v. Parker*, 952 F.2d 31, 32-33 (2d Cir. 1991).  Petitioner attempts to distinguish *Camara* on the level of restriction imposed, but this factor was not determinative of the Court's finding in that case.  *See* 235 F. Supp. 2d at 1176.

Petitioner also argues that the voluntary cessation doctrine applies as an exception to the mootness doctrine.  This exception "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior."  *Unified Sch. Dist. No. 259 v. Disability Rights Ctr. of Kan.*, 491 F.3d 1143, 1149 (10th Cir. 2007) (quotation omitted).  In order to defeat this exception, Respondent must "meet[] the formidable burden of demonstrating that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  *Id.* (quotation omitted).  The Tenth Circuit in *Riley* addressed the voluntary cessation exception:

> We are somewhat concerned about the circumstances surrounding Appellant's release and the potential for the INS to resume Appellant's detention.  However, while arguably the narrow exception of voluntary cessation may be applicable, the record provides inadequate development and support of this issue.

310 F.3d at 1257.  Like in *Riley*, while the conditions imposed on Petitioner might be onerous, I do not find there to be an adequate record to support a finding that the allegedly wrongful behavior could recur.

Instead, I find that dismissal without prejudice is the appropriate course of action.  In replying to Petitioner's voluntary cessation argument, Respondent concedes that "any

future detention would not evade review but would itself be subject to habeas review."

(Resp't's Reply to Mot. to Dismiss 6.)  The Tenth Circuit has similarly held that "because circumstances may ultimately change in petitioner's situation, we affirm the dismissal of his habeas petition without prejudicing his ability to file a new § 2241 petition in the future." *Sobreanes v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004).  Similarly, because Petitioner's circumstances may change, I dismiss the present Petition without prejudicing her ability to file a new habeas petition in the future.

**C. CONCLUSION**

Based on the foregoing, it is hereby

ORDERED that Respondent's Motion to Dismiss [doc. #23], filed April 17, 2009, is **GRANTED** and this case is **DISMISSED AS MOOT WITHOUT PREJUDICE**.

Dated:  July 6, 2009.

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge